NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210122-U

NO. 4-21-0122

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 24, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | McLean County |
| CHARLES STEELE, | ) | No. 19DT696 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Pablo A. Eves, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held:* The trial court did not err in granting defendant's motion to suppress evidence.

¶ 2    On February 23, 2021, the trial court granted defendant Charles Steele's motion to suppress evidence, finding the police officer who pulled over defendant's car did not have reasonable suspicion to justify the stop. The State filed a certificate of impairment, and this appeal followed. On appeal, the State makes the following arguments: (1) defendant did not establish a *prima facie* case the police officer lacked reasonable suspicion for the traffic stop; (2) the trial court erred by finding the police officer who stopped defendant's car did not have reasonable suspicion; and (3) even assuming *arguendo* the stop was not lawful, the exclusionary rule should not apply because the police officer who stopped defendant did not engage in police misconduct. For the following reasons, we affirm the trial court's order granting defendant's motion to suppress.

I. BACKGROUND

¶ 4           On November 16, 2019, defendant was arrested for driving under the influence of

alcohol (DUI) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2018)) and illegal transportation (625

ILCS 5/11-502(a) (West 2018)).  On September 4, 2020, defendant filed a motion to suppress

evidence, arguing the police did not have reasonable and articulable suspicion justifying the stop

of his vehicle on November 16, 2019.

¶ 5           On February 23, 2021, the trial court held a hearing on defendant's motion to

suppress.  The audio recording system did not function during the first part of the hearing.  A

bystander's report signed by the assistant public defender, the assistant state's attorney, and the

trial judge was included as part of the record.  The bystander's report stated:

> "Prior to the audio recording being corrected, [defendant] was sworn in and called
>
> to the stand by [defense counsel].  He was asked if he remembers the night in
>
> question, where he answered affirmatively. He was then asked if he had
>
> committed any traffic infractions that night, he responded that he did not.
>
> Assistant State's Attorney *** did not have any cross examination.  At this time,
>
> [defense counsel] asked that the burden be shifted to the state.  [The assistant
>
> state's attorney] moved for a directed finding and was denied.  The burden was
>
> shifted [to the State], and the audio recording was then restarted.  This
>
> encompasses all events not captured on recording."

¶ 6           The State then called Officer Robert King of the Le Roy Police Department.

Officer King testified he had training in DUI detection and investigation and had investigated

approximately 110 DUI offenses.  On November 16, 2019, around 7 p.m., he stopped at the

Freedom gas station in Le Roy, Illinois.  Officer King indicated it was his routine to stop at

Freedom at the beginning of his shift to get a soft drink and do a business check by talking to the clerk, whom he had known for many years. When he parked his patrol vehicle in front of the gas station, he looked inside and saw defendant swaying from side to side. Officer King then entered the gas station as defendant was leaving and smelled the strong odor of alcohol coming from defendant as they passed. Officer King noted alcohol was not sold at the gas station. Further, other than the clerk who Officer King knew did not drink alcohol, defendant was the only person in the gas station. Defendant then walked to a vehicle and "staggered a little bit" before he got into the driver's seat. Officer King immediately walked back to his squad car. Defendant pulled onto Main Street, and Officer King followed him. Defendant then turned down an alley a little north of the gas station and next made a right-hand turn south onto Chestnut Street, followed by a right hand turn onto Cedar Street. He then turned back into the Freedom gas station he had just left.

¶ 7        Officer King parked across the street and watched defendant. According to Officer King, he thought it was odd defendant returned to the gas station and believed defendant possibly was attempting to elude him. Defendant went back into the gas station for approximately one minute, then exited the station, returned to the vehicle he was driving, and made a left turn out of the parking lot onto Main Street. Officer King resumed following defendant. Defendant made a right turn onto Pine Street, then turned right onto Chestnut Street, and continued on Chestnut Street until he turned into a Casey's gas station. At that point, Officer King stopped defendant, believing defendant was potentially impaired by alcohol based on his initial observations of defendant at the Freedom gas station and defendant's driving. We note the record does not indicate the officer ever spoke to the gas station clerk about her observations of defendant either on the night the officer arrested defendant or as a follow-up investigation prior

to the suppression hearing. Officer King acknowledged he did not observe defendant commit a traffic violation.

¶ 8    In ruling on defendant's motion to suppress, the trial court stated Officer King's description of defendant's driving was credible but defendant did not engage in erratic driving by driving in a circle back to the gas station he just left. The court did note it seemed odd defendant went to the same gas station twice and then went to a second gas station. However, the court emphasized Officer King did not observe defendant commit any traffic violations. The court did not question Officer King's testimony that he observed defendant swaying inside the gas station or that defendant smelled strongly of alcohol when the two men were in close proximity. However, the court did question the credibility of Officer King's testimony that he saw defendant stagger as defendant walked across the parking lot.

¶ 9    According to the trial court, "what we're actually looking at in terms of the standard reasonable articulable suspicion to believe that someone is not capable or is committing driving under the influence I should say or impaired driving is sort of belied by the observations of the officer." The court continued, "There were no traffic violations during those trips, and any observations about the strong odor of alcohol and the swaying don't necessarily add up to impaired, or I should say a reasonable articulable suspicion that an individual is operating a motor vehicle while under the influence." The court concluded Officer King did not have reasonable suspicion to stop defendant. However, the court also noted it did not think it would tell Officer King not to make the stop in this case because the court wanted Officer King "out there protecting our community." Regardless, the court indicated Officer King did not have reasonable suspicion to make the stop. According to the court: "I think that there had to be something more than the strong odor of alcohol and the sway that was seen, that was not in the

- 4 -

context of standardized field sobriety test.  It was a sway, it was unsolicited, it was unelicited by the officer.  Even standing here I'm swaying and both of my feet are on the ground.  So I don't think there was enough.  Motion to suppress evidence is granted."

¶ 10　　　　　On February 24, 2021, the State filed a certificate of impairment, and this appeal followed.

¶ 11　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　　　　　　　　A. Standard of Review and *Prima Facie* Case

¶ 13　　　　　The question on appeal is whether the trial court erred in granting defendant's motion to suppress.  This entails a two-part standard of review.  *People v. Brooks*, 2017 IL 121413, ¶ 21, 104 N.E.3d 417.  "Under this standard, a circuit court's factual findings are reversed only if they are against the manifest weight of the evidence, while the court's ultimate legal ruling as to whether suppression is warranted is reviewed *de novo*."  *Brooks*, 2017 IL 121413, ¶ 21.

¶ 14　　　　　"When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion."  *Brooks*, 2017 IL 121413, ¶ 22.  The defendant must first establish a *prima facie* case the evidence in question was obtained as the result of an illegal search or seizure.  *Brooks*, 2017 IL 121413, ¶ 22.  A *prima facie* showing means the defendant has the primary responsibility for establishing the legal and factual bases for the motion to suppress.  *Brooks*, 2017 IL 121413, ¶ 22.  "If a defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. [Citation.] However, the ultimate burden of proof remains with the defendant."  *Brooks*, 2017 IL 121413, ¶ 22.

¶ 15　　　　　The State initially argues the trial court erred in finding defendant established a

*prima facie* case the stop in this case was unlawful, which shifted the burden to the State to present evidence countering defendant's *prima facie* case. However, defendant presented evidence he was stopped by the police officer while defendant was driving his motor vehicle at a time when defendant had committed no traffic offenses. See *People v. Chestnut*, 398 Ill. App. 3d 1043, 1048, 921 N.E.2d 811, 817 (2010) (holding the defendant's *prima facie* case must show he was doing nothing unusual to justify the warrantless seizure). Moreover, as our supreme court has held, defendant still bore the ultimate burden of proof with regard to his suppression motion. *Brooks*, 2017 IL 121413, ¶ 22.

¶ 16                                    B. Reasonable Articulable Suspicion

¶ 17            The ultimate issue here is whether Officer King had a reasonable articulable suspicion to stop defendant's vehicle. A citizen has the right to be free from unreasonable searches and seizures under both the United States and Illinois Constitutions. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. "The cornerstone of the fourth amendment is reasonableness, which seeks to balance the interest in according discretion in enforcing the law for the community's protection and safeguarding against invasions of citizens' privacy." *People v. Hill*, 2020 IL 124595, ¶ 19, 162 N.E.3d 260. For purposes of the fourth amendment, reasonableness normally requires a warrant supported by probable cause. *People v. Love*, 199 Ill. 2d 269, 275, 769 N.E.2d 10, 14 (2002).

¶ 18            However, a police officer may conduct a brief, investigatory stop of an individual if the officer has a reasonable belief the individual has committed or is about to commit a crime. *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092 (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). According to our supreme court:

"The officer must have a 'reasonable, articulable suspicion' that criminal activity is afoot. [Citation.] Although 'reasonable, articulable suspicion' is a less demanding standard than probable cause, an officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity. [Citation.] The investigatory stop must be justified at its inception and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the governmental intrusion upon the constitutionally protected interests of the private citizen. [Citation.] In judging the officer's conduct, we apply an objective standard and consider, 'would the facts available to the officer *at the moment of the seizure* or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' [Citation.] Further, when evaluating the validity of the stop, we consider ' "the totality of the circumstances—the whole picture." ' [Citation.]" (Emphasis added.) *Timmsen*, 2016 IL 118181, ¶ 9.

The standard established in *Terry* has been codified into Illinois law at section 107-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107-14 (West 2018)). The *Terry* standard governs motor vehicle stops. *Timmsen*, 2016 IL 118181, ¶ 9.

¶ 19    We initially note the trial court found Officer King's testimony that defendant staggered in the parking lot lacked credibility. The State does not dispute this credibility finding nor does the State argue the court's conclusion defendant did not stagger was against the manifest weight of the evidence. Instead, the State asserts the officer's observation of defendant swaying and the officer's detection of the strong odor of an alcoholic beverage when defendant walked past the officer were "more than sufficient" to justify the stop. In its brief, the State

further maintains "the strong odor of alcohol alone is sufficient to satisfy the 'low bar' of reasonable suspicion." In support of this proposition, the State cites *People v. McDonough*, 239 Ill. 2d 260, 940 N.E.2d 1100 (2010). We find *McDonough* is readily distinguishable, if not inapposite.

¶ 20         In *McDonough*, 239 Ill. 2d at 262, 940 N.E.2d at 1103, a police officer observed a vehicle with its lights extinguished parked on the side of a busy highway. The officer stopped his patrol car behind the vehicle, activated his emergency lights, and approached the driver's side door of the parked vehicle. *McDonough*, 239 Ill. 2d at 262-63, 940 N.E.2d at 1103-04. The defendant, who was the driver of the vehicle, partially rolled down his window, and the officer detected the odor of alcohol on defendant's breath. *McDonough*, 239 Ill. 2d at 263, 940 N.E.2d at 1104. Defendant then admitted he had been drinking. *McDonough*, 239 Ill. 2d at 263, 940 N.E.2d at 1104. The supreme court held this set of facts fell "within the community caretaking exception to the fourth amendment." *McDonough*, 239 Ill. 2d at 274, 940 N.E.2d at 1110. Here, the State does not argue Officer King was engaged in a community caretaking role when he stopped defendant's vehicle.

¶ 21         The State also cites *People v. Patel*, 2020 IL App (4th) 190917, 163 N.E.3d 1282, arguing "there is no difference between reasonable suspicion that justifies prolonging a traffic stop and reasonable suspicion that justifies a traffic stop." However, in *Patel*, the defendant was stopped by a police officer for driving 19 miles per hour over the speed limit. *Patel*, 2020 IL App (4th) 190917, ¶ 4. Then, when the officer spoke with the defendant, the officer smelled an odor of alcohol emanating from defendant as well as from inside the vehicle. *Patel*, 2020 IL App (4th) 190917, ¶ 5. The officer observed defendant's eyes were glassy, and defendant admitted he had just left a restaurant where he had consumed 2½ pale ale beers. *Patel*, 2020 IL

App (4th) 190917, ¶ 5.  Quite obviously, the facts in *Patel* are not remotely similar to the facts in the present case.

¶ 22    As to defendant's swaying inside the gas station, the trial court found defendant's swaying while his feet were stationary was insignificant.  As previously indicated, the court stated, "even standing here, I'm swaying and both of my feet are on the ground."

¶ 23    Defendant argues Officer King did not seize him when defendant entered his vehicle after he exited the Freedom gas station on the first occasion because the officer did not yet have sufficient reasonable suspicion to believe defendant was under the influence.  The State essentially does not respond to this argument, and we note the officer also did not seize defendant when defendant entered his vehicle after exiting the gas station on the second occasion.  The impetus of defendant's argument is that Officer King followed defendant's vehicle to observe whether defendant's operation of his motor vehicle might indicate impaired driving.  The record reflects the officer did not observe any traffic violations as defendant drove several blocks and negotiated at least six turns before being stopped.  The record further does not indicate the officer observed any erratic driving like irregular changes of speed or weaving within the lanes of the streets.  Thus, in the immediate moment before the seizure, the officer had just observed defendant's unremarkable and satisfactory operation of his motor vehicle.

¶ 24    In its reply brief, the State emphasizes defendant's evasive driving was a significant factor in forming the officer's reasonable suspicion to stop defendant's vehicle.  However, the trial court's factual findings did not include any reference whatsoever to "evasive driving" on the part of defendant.  While Officer King speculated in a single sentence of his testimony, "maybe he's trying to get away from me because he can see me behind him," the

court did not consider defendant's driving as evasive or elusive. Accordingly, the State's strong emphasis on defendant's evasiveness is unconvincing.

¶ 25      Based on all of the foregoing, we conclude the trial court did not err in finding Officer King lacked a reasonable articulable suspicion that criminal activity was afoot at the moment of defendant's seizure.

¶26                           C. Exclusionary Rule

¶ 27      As a final matter, the State argues the exclusionary rule does not apply even if the police officer did not have reasonable suspicion to stop defendant's vehicle because Officer King did not engage in misconduct. Defendant asserts the State has forfeited this argument because it was not raised before the trial court and is now made for the first time on appeal. We agree with defendant. "Issues not raised in the trial court are generally considered waived on appeal. [Citation.] The principal of waiver applies to the State as well as the defendant in a criminal case. [Citation.]" *People v. Holloway*, 86 Ill. 2d 78, 91, 426 N.E.2d 871, 877 (1981). Thus, we decline to address the State's argument the exclusionary rule does not require suppression of the evidence gathered following the stop of defendant's vehicle.

¶ 28                           III. CONCLUSION

¶ 29      For the reasons stated, we affirm the trial court's judgment allowing defendant's motion to suppress evidence.

¶ 30      Affirmed.