2023 IL App (2d) 220313
No. 2-22-0313
Opinion filed June 27, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-DT-1808 |
| KEARI D. TENNORT, | ) ) ) | Honorable Bolling W. Haxall III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1 On December 5, 2021, defendant, Keari D. Tennort, was charged with two counts of driving under the influence of alcohol (625 ILCS 5/11-501(a)(1), (a)(2) (West 2020)). He moved to suppress evidence of these crimes, arguing that Leonardo Juarez, the arresting officer, lacked reasonable and articulable suspicion to conduct an investigatory stop. Following a hearing, the trial court denied the motion to suppress. Defendant moved the court to reconsider, and the court denied the motion. Following a stipulated bench trial, defendant was convicted of driving under the influence of alcohol and sentenced to 12 months of conditional discharge. In this timely appeal, defendant argues that the trial court should have granted his motion to suppress because Juarez did not have reasonable and articulable suspicion to conduct an investigatory stop. We affirm.

¶ 2                                     I. BACKGROUND

¶ 3    Juarez testified at the March 30, 2022, suppression hearing that he was a Lake County sheriff's deputy and had been assigned to patrol duty for about three years. On December 5, 2021, he was assigned to "[p]atrol [his] district" in Lake County. During that patrol, he was called to the Speedway gas station near Green Bay Road and Wadsworth Road. The call concerned an unwanted person. Juarez proceeded to that Speedway, which was well-lit.

¶ 4    At 3:40 a.m., while addressing concerns about the unwanted person at the Speedway, Juarez "observed [a] brown Volkswagen Jetta." Defendant was driving the Volkswagen. When Juarez was asked if he "observe[d] any violations of the Illinois traffic code," Juarez replied that "[he] did." Specifically, the Volkswagen was "driving visibly at a high rate of speed on Green Bay southbound from Wadsworth." Juarez stated that "[m]aybe one or two" other cars were on the road. Juarez was "near the [gas] pumps," four to five car lengths away from the Volkswagen when he observed it. While watching the Volkswagen, Juarez saw it "abruptly just stop[ ]in the middle of the road." No traffic control device, stop sign, or stop light was at the location where the Volkswagen stopped. "Eventually after a few seconds," the Volkswagen turned into the Speedway.

¶ 5    The Volkswagen pulled up to a pump and stopped. Juarez saw defendant get out of the driver's seat. Defendant "appeared off balance, unsteady, stumbling." Juarez saw that "[defendant] actually had two *** females assisting him to the gas station." Juarez did not approach defendant at that time because he was addressing the unwanted-person call and "wanted to confirm [his] suspicion that [defendant] was going to return to be the driver of [the Volkswagen] again once [Juarez] concluded [his] business with the other individual."

¶ 6    Juarez resolved the issue with the unwanted person and saw defendant get in the driver's seat of the Volkswagen. Defendant left the Speedway, driving south on Green Bay Road. Juarez

followed defendant. Juarez did not know how fast defendant was driving because his "radar was not able to catch [the] speed." Juarez followed defendant for three miles before pulling him over. Juarez did not pull defendant over sooner because he "wanted to observe [defendant] longer just to build ***—to confirm [his] suspicion of [defendant] being under the influence." "[O]nce [Juarez] confirmed [his] suspicion, [he] pulled [defendant] over." However, Juarez acknowledged that he "didn't observe any violations of the law or Illinois traffic code" while following defendant.

¶ 7    Juarez stated that he pulled defendant over because, "[w]hen [he] initially observed [defendant] exiting the vehicle, [defendant] appeared to be impaired." Juarez explained that "it is not normal for somebody to be driving and then get out of the vehicle and be unsteady and off balance."

¶ 8    In denying defendant's motion to suppress, the trial court noted that the evidence presented, which consisted of only Juarez's testimony, "was extremely cursory." The court observed that, "with respect to the stopping in the middle of the street, there is no discussion of lane markings, entry to the gas station, whether or not it was an appropriate place to stop and turn." The court wondered, "[I]s this somebody who realized they needed fuel, they want a soda, so they stopped, turned, you know, came to a complete stop and turned into the gas station?" The court noted that "[t]here's really no evidence one way or the other about that." Likewise, the court observed that no evidence indicated what the speed limit was at that location. Without that additional information, Juarez's testimony that defendant was traveling at a high rate of speed "[did not] assist" the court in deciding whether defendant's speed was a valid basis for the stop. That said, the court found that Juarez could properly stop defendant based on defendant's "balance issues so as to require physical assistance from the women" in walking to the gas station, which made Juarez believe that defendant was impaired.

¶ 9    Defendant moved the trial court to reconsider. He cited *Navarette v. California*, 572 U.S. 393, 403 (2014), for the proposition that "[e]xtended observation of an allegedly drunk driver might eventually dispel a reasonable suspicion of intoxication." In *Navarette*, the Court held that, where an anonymous tip provided reasonable suspicion that a truck driver was under the influence, the suspicion did not dissipate when the officers pursued the truck for five minutes without noticing any erratic behavior. *Id.* at 395, 403-04. Relying on the proposition from *Navarette*, but distinguishing its facts, defendant argued that any basis Juarez had to stop him dissipated after Juarez observed defendant driving for three miles without incident.

¶ 10   The trial court denied the motion. The court noted that *Navarette* involved a stop predicated on an anonymous tip. See *id.* at 395. By contrast, Juarez, whom the court found "very credible," personally observed that defendant appeared impaired when defendant stepped out of his car. Although the court agreed that factors other than intoxication could have caused defendant to need assistance exiting his car and walking to the gas station, it found that "a possible lawful explanation does not preclude an officer from investigating." Moreover, the court found that, while none of defendant's driving before pulling into the gas station "was in itself a violation that would permit a stop," those observations did "give [Juarez] a little more information on which to believe that [defendant] was possibly impaired." That is, those observations "move[d] in favor of that belief as opposed to contrary to it." After noting that the defendant in *Navarette* was stopped after five minutes of unremarkable driving, the court found "no indication that the amount of time [Juarez] followed the defendant's vehicle was substantially more than that[,] such that the [United States Supreme Court's] analysis in *Navarette* will not apply."

¶ 11   This timely appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13    At issue on appeal is whether the trial court erred in denying defendant's motion to suppress.

¶ 14                                A. Standard of Review

¶ 15    We employ a two-part standard when reviewing a trial court's ruling on a motion to suppress evidence. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. "First, we defer to the trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence." *Id.* "A finding is against the manifest weight of the evidence when it is unreasonable." *Id.*; see *People v. Miller*, 2014 IL App (2d) 120873, ¶ 25 (noting that findings are against the manifest weight of the evidence if they are unreasonable, arbitrary, or not based on evidence or when an opposite conclusion is clearly evident). "Second, we review *de novo* the trial court's ultimate determination on whether the evidence should be suppressed." *Sims*, 2022 IL App (2d) 200391, ¶ 72.

¶ 16    Here, defendant's opening brief does not take an express stance on the standard of review; if anything, the brief insinuates that our review is strictly *de novo*. In its response, the State claims that deferential review is appropriate because defendant "disputes the facts leading to his arrest" in that he "essentially disputes the credibility and accuracy of *** Juarez'[s] testimony." According to the State, defendant does so in three ways: (1) he "argues that Juarez'[s] observations of defendant's speed were insufficient where *** Juarez was not able to record defendant's speed," (2) he "disputes the reliability of *** Juarez'[s] testimony based on the allegation that *** Juarez'[s] 'attention was diverted by the call he was answering at the time'[1] that he initially observed defendant," and (3) he "disputes *** Juarez'[s] observation that defendant stopped abruptly in the middle of the road and turned into the gas station."

---

[1]Here the State quotes from defendant's brief.

¶ 17    In reply, defendant claims that "the disputed facts raised by the State are conclusions of law reached by the trial court and subject to *de novo* review." Yet, defendant also argues that "Juarez's testimony lacked indicia of reliability and should not have been credited by the trial court."

¶ 18    A credibility determination is a finding of fact. *In re A.V.*, 336 Ill. App. 3d 140, 143 (2002) ("Undisputed facts in a motion to suppress are reviewed *de novo*, but the trial court's findings of fact and credibility determinations, and inferences drawn therefrom by the trial court and arresting officers, will be given due deference."). The trial court found Juarez "very credible." We cannot conclude that that finding is against the manifest weight of the evidence. Defendant's contention that Juarez's testimony "lacked indicia of reliability," which is a term of art employed in cases concerning tips to the police about criminal activity (see, *e.g.*, *People v. Wilson*, 260 Ill. App. 3d 364, 369 (1994)), seems to concern the weight that should be afforded Juarez's testimony. We will not reweigh Juarez's testimony, as the trial court found Juarez very credible and "due weight must be given to the reasonable inferences the officer is entitled to draw from the facts in light of his experience." *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 19.

¶ 19    We now consider *de novo* whether the evidence should be suppressed. In reviewing *de novo* the trial court's ultimate legal ruling, "we are 'free to undertake [our] own assessment of the facts in relation to the issues and may draw [our] own conclusions when deciding what relief should be granted.' " *City of Highland Park v. Kane*, 2013 IL App (2d) 120788, ¶ 11 (quoting *People v. Hackett*, 2012 IL 111781, ¶ 18).

¶ 20                              B. Propriety of Stop

¶ 21    Defendant argues that the trial court should have suppressed the evidence because (1) Juarez lacked reasonable and articulable suspicion to conduct an investigatory stop, which was

based on his belief that defendant was driving while impaired, and, (2) even if Juarez possessed reasonable and articulable suspicion that defendant was driving while impaired, that suspicion dissipated when defendant drove for three miles without incident before the traffic stop. We consider each of these contentions in turn.

¶ 22                                    1. Reasonable and Articulable Suspicion

¶ 23    Generally, the police must obtain a warrant supported by probable cause to seize an individual. *Miller*, 2014 IL App (2d) 120873, ¶ 21. However, a warrantless seizure is proper in limited circumstances. *Id.* One type of proper warrantless seizure is a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *Miller*, 2014 IL App (2d) 120873, ¶ 21. Under *Terry*, the police may make an investigatory stop without probable cause if they reasonably believe that the person stopped has committed, is committing, or is about to commit a crime. *Id.* That is, the stop must be "based on reasonable suspicion—articulable, specific facts (and the rational inferences therefrom)—that suggest a crime has been or is about to be committed." *People v. Patel*, 2020 IL App (4th) 190917, ¶ 15.

¶ 24    This reasonable-and-articulable-suspicion standard is less demanding than either the proof-beyond-a-reasonable-doubt or probable-cause-to-arrest standards. See *Kane*, 2013 IL App (2d) 120788, ¶ 10. Reasonable and articulable suspicion is a "commonsense, nontechnical conception[ ] that deal[s] with ' "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." ' " *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983), quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

¶ 25    "When 'judging a police officer's conduct' in detaining a vehicle based on *** reasonable suspicion, 'we apply an objective standard.' " *Patel*, 2020 IL App (4th) 190917, ¶ 16 (quoting

*Hackett*, 2012 IL 111781, ¶ 29). We consider whether, when viewed objectively, the totality of the facts and circumstances would warrant a reasonable and prudent person to believe that a crime has been or is about to be committed. See *id.* ¶ 20.

¶ 26     Here, Juarez had a proper basis to stop defendant. He testified that defendant was "driving visibly at a high rate of speed." Assuming that driving at this "high rate of speed" was a violation of section 11-601(a) of the Illinois Vehicle Code (625 ILCS 5/11-601(a) (West 2020) ("No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property.")), Juarez had a proper basis to stop defendant (*Kane*, 2013 IL App (2d) 120788, ¶ 15 (a traffic violation provides a valid basis to stop a vehicle)).

¶ 27     That said, even if defendant's driving at a high rate of speed did not provide a proper basis to stop defendant, an investigatory stop was nonetheless constitutionally reasonable here, given all the facts and circumstances. Specifically, on a winter day between 3 and 4 a.m., Juarez stood outside a Speedway gas station. The Speedway is located near the intersection of Green Bay Road and Wadsworth Road—both are two-way four-lane streets. See *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 ("An appellate court may take judicial notice of readily verifiable facts if doing so will aid in the efficient disposition of a case, even if judicial notice was not sought in the trial court." (Internal quotation marks omitted.)). The Speedway was within the area Juarez patrolled. While addressing another matter at the Speedway, Juarez's attention was drawn away from that matter when he saw defendant speeding down Green Bay Road. While observing this, Juarez saw defendant abruptly stop his Volkswagen on Green Bay Road outside the well-lit Speedway and near where Juarez was standing. Juarez saw "[m]aybe one or two" cars on the road, and no traffic control device in the area would have caused defendant to stop his car

abruptly. Defendant remained stopped on Green Bay Road, a four-lane street, for several seconds before turning into the Speedway. Defendant parked the Volkswagen, and Juarez saw defendant lose his balance and stumble while getting out of his car. Defendant's ability to walk without falling was so poor that two of defendant's passengers exited the vehicle and assisted defendant in walking to the gas station.

¶ 28    Supporting our position that the investigatory stop of defendant was constitutionally reasonable is *State v. Aaberg*, 2006 SD 58, 718 N.W.2d 598.[2] There, the arresting officer was helping another officer make a report of a stolen vehicle. *Id.* ¶ 2. The arresting officer was sitting in his patrol car near the Stoplight Lounge, a bar. *Id.* ¶¶ 2, 14. Ice covered the city streets and the bar's parking lot. *Id.* ¶ 2. The arresting officer saw the defendant's car pull into the bar's parking lot. *Id.* ¶ 3. The defendant, who did not commit any traffic violations or drive erratically, parked his car without incident. *Id.* However, after the defendant parked, he exited his car with a "great deal of difficulty." *Id.* The defendant walked to the bar's entrance at a very slow and cautious pace, which the arresting officer described as "far slower and more deliberate than an average person on similar conditions." *Id.* Although the defendant held his arms out to his sides to maintain his balance, he almost fell at one point. *Id.* Based on these observations, the arresting officer decided to stop the defendant and investigate further because the arresting officer believed that the defendant was under the influence of " 'something.' " *Id.* The arresting officer's investigation revealed that the defendant was intoxicated, and the defendant was charged with two counts of

---

[2]In considering *Aaberg*, we recognize that each case addressing reasonable and articulable suspicion must be decided based on its own unique facts and circumstances. *Ornelas*, 517 U.S. at 696.

driving while under the influence of alcohol. *Id.* ¶¶ 1, 4. The defendant moved to suppress all the evidence supporting the charges, arguing that the arresting officer lacked reasonable and articulable suspicion to conduct an investigatory stop. *Id.* ¶ 1.

¶ 29  The trial court granted the motion to suppress. *Id.* ¶ 7. Without making any credibility determinations, the court concluded that the arresting officer's decision to stop the defendant was based "on a mere whim" or "idle curiosity" rather than reasonable and articulable suspicion that the defendant was driving while impaired. *Id.* ¶ 12. To that end, the court determined that the arresting officer's "suspicion *** based solely on [the defendant's] difficulty exiting his vehicle and walking toward[ ] the [bar]" was insufficient. (Internal quotation marks omitted.) *Id.*

¶ 30  The South Dakota Supreme Court disagreed. *Id.* ¶ 13. In doing so, the court observed that the defendant's inability to walk without difficulty, "coupled with the fact that [the defendant] was walking into a bar during late evening hours, provid[ed] a specific and articulable basis by which a reasonable police officer could suspect [the defendant] of being under the influence of alcohol." *Id.* ¶¶ 13-14. "Thus, it was not unreasonable for [the arresting officer] to conduct an investigatory stop of [the defendant] in an effort to confirm or dispel [his] suspicions."[3] *Id.* ¶ 14.

---

[3]The court also observed that the defendant's prosthetic leg could have contributed to some of the difficulty walking that the defendant exhibited. But, because the arresting officer did not know about the defendant's disability before the investigatory stop, the defendant's disability was irrelevant in assessing whether the stop was constitutionally reasonable. Here, like in *Aaberg*, the record reflects that defendant had "a physical disability related to his legs[.]" However, as in *Aaberg*, the record reveals that Juarez was unaware of that fact before he decided to stop defendant and, thus, that fact is immaterial here.

¶ 31    In our view, if the investigatory stop in *Aaberg* was constitutionally reasonable, the stop here was also. The only factual difference we see between this case and *Aaberg* that may have weighed more heavily in favor of performing an investigatory stop in *Aaberg* is that the defendant there was walking into a bar, not a gas station (as defendant here). That said, many articulable facts here about the way defendant was driving before he exited his car at the Speedway, which were not present in *Aaberg*, provide support for an investigatory stop in this case. Similarly, while the icy condition of the parking lot in *Aaberg* may have slightly weighed against a decision to stop the defendant there, no evidence indicated that the condition of the Speedway parking lot would cause defendant here to appear off-balance and unsteady, to stumble, and to require the assistance of two people to walk to the gas station. The fact that defendant here needed the assistance of two people, while the defendant in *Aaberg* could walk on the icy parking lot without assistance, further supports a conclusion that, if the stop in *Aaberg* was constitutionally reasonable, Juarez certainly had reasonable and articulable suspicion to conduct an investigatory stop of defendant.

¶ 32    In challenging the trial court's conclusion that Juarez had reasonable and articulable suspicion to stop him, defendant asserts that Juarez provided no testimony concerning (1) the speed defendant was driving before turning into the Speedway, (2) the speed limit in the area, and (3) whether there were any markings on the road or signage justifying defendant's abrupt stop before turning into the Speedway. Likewise, defendant notes that (4) Juarez observed defendant from a parked location, not on the roadway, and (5) his attention to defendant was "diverted by the call he was answering at the time." Regarding defendant's first, second, and fourth points, the evidence revealed that the Speedway was in Juarez's patrol area and that he had been a patrol officer in the area for over two years. We must give due weight to Juarez's reasonable inference that defendant's driving was, at a minimum, peculiar, given Juarez's familiarity with the area as a

patrol officer. See *Thomas*, 2019 IL App (1st) 170474, ¶ 19. Defendant's third point is not well taken, as Juarez specifically testified that there was "[n]othing" in the area to explain why defendant would have abruptly stopped. As to defendant's fifth and final point, Juarez never testified that his attention to defendant was "diverted." And, the fact that Juarez's attention was drawn away from the unwanted-person matter to defendant's driving supports, rather than detracts from, the conclusion that defendant's manner of driving contributed to a reasonable and articulable suspicion to conduct an investigatory stop.

¶ 33          2. Dissipation of Reasonable and Articulable Suspicion

¶ 34    Defendant suggests that any reasonable and articulable suspicion that he was driving while impaired dissipated when he drove without incident for three miles.[4]

¶ 35    Professor Wayne LaFave has commented on the dissipation of reasonable suspicion:

"It sometimes happens that when a valid traffic stop was made on reasonable suspicion, that suspicion will rather quickly dissipate based upon other information coming to the officer's attention after the vehicle has just come to a stop—typically, even before the officer has had any opportunity to personally engage the driver of that vehicle. This usually happens in one of two recurring situations: (1) where the reasonable suspicion is grounded in some aspect of the vehicle's appearance (*e.g.*, apparent absence of a mandated

_____

[4] In addressing defendant's argument, we presume that, when Juarez intimated that defendant did not commit any traffic violations while he was following defendant for three miles, he meant that he also did not observe defendant driving erratically. See *People v. Greco*, 336 Ill. App. 3d 253, 258-59 (2003) (erratic driving, including weaving within a single lane, gives reasonable suspicion of driving under the influence, which is sufficient to justify a traffic stop).

license plate), which once the vehicle has come to a stop is clearly seen *not* to be the case; or (2) where the reasonable suspicion is grounded in information related to the known identity of the vehicle's owner (*e.g.*, that the owner's driver's license has been suspended), which turns out not to be a basis for the stop because the present driver is someone other than the owner." (Emphasis in original.) 4 Wayne R. LaFave, Search and Seizure § 9.3(g), at 559-60 (6th ed. 2020).

¶ 36    Defendant cites *People v. Steele*, 2021 IL App (4th) 210122-U, ¶ 18, as an example of where reasonable and articulable suspicion dissipated before the seizure. In our view, defendant misreads *Steele*.

¶ 37    In *Steele*, the arresting officer stopped at a gas station at 7 p.m. in November 2019 and saw the defendant standing in the gas station, swaying from side to side. *Id.* ¶ 6. The arresting officer entered the gas station as the defendant was leaving and detected a strong odor of alcohol emanating from the defendant. *Id.* The defendant returned to his car, and the arresting officer followed him as he drove off and made various legal turns before returning to the gas station. *Id.* The arresting officer parked across the street and watched the defendant as he went back inside the gas station. *Id.* ¶ 7. The arresting officer followed the defendant when the defendant returned to his car and drove away. *Id.* The defendant pulled into another gas station, and the arresting officer stopped the defendant, believing that the defendant was "potentially impaired by alcohol based on his initial observations of [the] defendant at the [first] gas station and [the] defendant's driving." *Id.* However, the arresting officer admitted that he did not see the defendant commit a traffic violation, and the record did not indicate that the officer observed any erratic driving. *Id.* ¶¶ 7, 23. The defendant was arrested for, among other things, driving while under the influence of alcohol.

*Id.* ¶ 4. He moved to suppress the evidence obtained, the trial court granted that motion, and the State appealed. *Id.* ¶¶ 4, 9-10.

¶ 38 At issue on appeal was whether the arresting officer had reasonable and articulable suspicion to stop the defendant. *Id.* ¶ 17. The court assessed whether the defendant's swaying inside the first gas station (which the trial court found "insignificant"), combined with the odor of alcohol emanating from the defendant as he exited the first gas station, provided reasonable and articulable suspicion that the defendant was driving while impaired. *Id.* ¶¶ 19, 22. The court found that it did not. See *id.* ¶¶ 19-21.

¶ 39 Notably, in so concluding, the court never considered whether the arresting officer's suspicion that the defendant was impaired dissipated after the officer observed the defendant driving without incident. Although the court mentioned the defendant's driving, it did so only when addressing (1) the defendant's argument that the arresting officer followed him solely to bolster his belief that the defendant was driving while impaired and (2) the State's claim that the defendant was trying to evade the officer. *Id.* ¶¶ 23-24. The court noted in connection with the first point that, "in the immediate moment before the seizure, the officer had just observed [the] defendant's unremarkable and satisfactory operation of his motor vehicle." *Id.* ¶ 23.

¶ 40 We find *Steele* unpersuasive here for several reasons. Most importantly, as noted, *Steele* never addressed the dissipation of reasonable and articulable suspicion—and rightfully so. At issue in *Steele* was whether the arresting officer *ever had* reasonable and articulable suspicion. The court determined that reasonable and articulable suspicion was lacking and never assumed *arguendo* that there was reasonable and articulable suspicion, for purposes of determining whether it dissipated.

¶ 41    Neither the parties nor this court found authority addressing the dissipation of reasonable and articulable suspicion under circumstances like those here. Perhaps none exists because, unlike the examples Professor LaFave mentioned (*e.g.*, driving a vehicle with some type of defect or driving while the privilege to drive is suspended or revoked), driving while impaired is not a condition readily and definitively disproved at or immediately after the moment of the stop.

¶ 42    Nevertheless, *Navarette* provides some helpful insight. There, a 911 caller reported that a truck ran her off the road. *Navarette*, 572 U.S. at 395. Five minutes later, the tip was broadcast to patrol officers. *Id.* Thirteen minutes after that broadcast, the arresting officer located the truck. *Id.* Five minutes after locating the truck, the arresting officer stopped the truck. *Id.* Another officer arrived at the scene, and, upon approaching the driver, the officers smelled marijuana. *Id.* Located in the back of the truck were 30 pounds of marijuana. *Id.* The driver and the passenger of the truck were arrested, and they moved to suppress the evidence leading to their arrests, arguing that the police lacked reasonable and articulable suspicion for an investigatory stop. *Id.* at 395-96. The motion was denied. *Id.* at 396.

¶ 43    At issue before the United States Supreme Court was, among other things, whether the stop was constitutionally reasonable. See *id.* at 401. The Court found that the stop was, noting that "the behavior alleged by the 911 caller, 'viewed from the standpoint of an objectively reasonable police officer, amount[s] to reasonable suspicion' of drunk driving." *Id.* at 401-02 (quoting *Ornelas*, 517 U.S. at 696). In reaching that conclusion, the Court observed:

"[W]e have consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.' [Citation.]

Nor did the absence of additional suspicious conduct, after the vehicle was first spotted by an officer, dispel the reasonable suspicion of drunk driving. [Citation.] It is

hardly surprising that the appearance of a marked police car would inspire more careful driving for a time. [Citation.] Extended observation of an allegedly drunk driver might eventually dispel a reasonable suspicion of intoxication, but the 5-minute period in this case hardly sufficed in that regard. Of course, an officer who already has such a reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving. [Citation.] Once reasonable suspicion of drunk driving arises, '[t]he reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques.' [Citation.] This would be a particularly inappropriate context to depart from that settled rule, because allowing a drunk driver a second chance for dangerous conduct could have disastrous consequences." *Id.* at 403-04.

¶ 44 Although *Navarette* concerned an anonymous tip, and this case does not, we still believe that *Navarette* is instructive. If an officer who receives an anonymous tip of criminal activity—like in *Navarette*—need not witness any criminal activity before conducting an investigatory stop, then we fail to see why an officer who personally observes a driver he reasonably believes is impaired—like in this case—needs to witness that driver driving erratically or unlawfully before conducting an investigatory stop. As *Navarette* recognized, a public policy requiring as such would have horrendous repercussions.

¶ 45 This is not to say, however, that in a tipster case an officer's prolonged observation of a driver may weigh against reasonable and articulable suspicion, *i.e.*, against conducting an investigatory stop. That situation is not before us. Likewise, we do not suggest that an officer's reasonable suspicion that a driver is impaired, when it is based on facts other than the driving, will justify a traffic stop after the officer's extensively prolonged investigation fails to uncover additional reasonable and articulable facts that the defendant is impaired. That scenario also is not

before us. With our decision here, we are concluding only that Juarez had reasonable and articulable suspicion to stop defendant based on, among other things, (1) the time, (2) the location, (3) defendant's high-speed and erratic driving before pulling into the Speedway, (4) defendant's stumbling while getting out of the vehicle, and (5) defendant's failure to walk to the gas station without assistance. The fact that Juarez observed defendant for three miles before stopping him is not material, as that is not a prolonged period under the facts and circumstances here. Compare *City of Norton v. Wonderly*, 172 P.3d 1205, 1210 (Kan. Ct. App. 2007) (where police received tip concerning a motorist driving while impaired, "[t]hree minutes of good driving within the city limits did not dissipate [the arresting officer's] reasonable suspicion [of impaired driving] based on the information conveyed to him that [the defendant] had driven his truck in an [*sic*] reckless manner"), with *State v. Schneider*, 80 P.3d 1184, 1186, 1188 (Kan. Ct. App. 2003) (where police saw the defendants purchase cold tablets containing pseudoephedrine and other innocuous items, travel to another store where no suspicious activity was observed, and then fail to signal a turn while traveling away from the second store, the appellate court questioned the basis of the stop, "since a significant amount of time [(and 15 miles)] passed between the alleged minor traffic violation and the ultimate stop").

¶ 46                            III. CONCLUSION

¶ 47    For these reasons, we affirm the judgment of the circuit court of Lake County.

¶ 48    Affirmed.

---

### *People v. Tennort*, **2023 IL App (2d) 220313**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 21-DT-1808; the Hon. Bolling W. Haxall III, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Anne C. Fung, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Jaylaan Slaughter, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---