2020 IL App (4th) 190917
IN THE APPELLATE COURT
FOURTH DISTRICT

FILED
September 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| MEHUL PATEL, | ) | No. 19DT342 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Pablo A. Eves, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment
and opinion.

**OPINION**

¶ 1        In June 2019, defendant, Mehul Patel, was charged by citation with one count of misdemeanor driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)). On June 24, 2019, at approximately 12 a.m., a Normal police officer observed defendant's speeding vehicle and initiated a traffic stop. The officer observed visible signs of intoxication, smelled alcohol emitting from defendant's car, and defendant admitted he had been drinking. After showing indicators of impairment on standard field sobriety tests, the officer arrested defendant for DUI. Defendant moved "to quash his arrest and suppress evidence pursuant to 725 ILCS 5/114-12," contending the police officer who stopped him for speeding had "no reasonable articulable suspicion that the [d]efendant was driving under the influence *** to extend the initial detention." Following a hearing on defendant's motion, during which it first viewed the footage

of the traffic stop from the officer's body and dashboard cameras and then heard testimony from the arresting officer and defendant, the trial court granted defendant's suppression motion.

¶ 2    On appeal, the State argues the trial court erred in "determin[ing] *** the police officer lacked *** reasonable suspicion to request defendant to perform field sobriety tests." We agree and reverse.

¶ 3                          I. BACKGROUND

¶ 4    At approximately 12 a.m. on June 24, 2019, Officer Jordan Krueger of the Normal Police Department sat in his squad car in the 1000 block of East College Avenue monitoring for speeders on the 30-mile-per-hour thoroughfare. Upon observing a speeding vehicle and using a handheld radar unit, Krueger clocked the vehicle's speed at 49 miles per hour. He testified he had tested the radar gun before and after his shift and it worked properly during each test. He pursued the vehicle and initiated a traffic stop to issue a speeding citation. Krueger testified he observed no weaving, drifting, or erratic braking by the speeding car as he pursued it.

¶ 5    Once the speeding vehicle stopped, Krueger approached it on the driver's side and met with the car's lone occupant—the driver, defendant, who produced his license and proof of insurance without incident. Krueger informed defendant he stopped him for speeding and told him the clocked speed. Defendant said he thought he was driving 35 miles per hour, which he believed was the speed limit. While speaking with defendant, Krueger "noticed that [defendant's] eyes were glassy or glossy and *** could smell the odor of an alcoholic beverage emitting from the vehicle and him." Upon inquiry from Krueger, defendant reported he had just left a restaurant in downtown Bloomington, Bakery and Pickle. Defendant said he met his brother for dinner and a few drinks. He admitted consuming alcohol, specifically 2½ India pale ale (IPA) beers. From his training and experience, which included 72 hours of DUI training and over 250 DUI investigations, Krueger

understood IPAs generally contained a higher alcohol content compared to standard beer. Krueger testified this initial discussion with defendant lasted approximately five minutes. He testified he then returned to his squad car to issue defendant a speeding ticket and "prepare for standardized field sobriety tests" because, based on his observation of and discussion with defendant, he suspected defendant "might be under the influence of alcohol." The footage of the stop confirmed Krueger's testimony by showing him advise his colleague (an unidentified officer at the scene) that he planned to conduct a "55" in front of his car. In his squad car, Krueger completed the speeding ticket and placed it and defendant's driver's license on his car's dashboard.

¶ 6        Krueger then returned to defendant's vehicle and asked him to step outside for field sobriety testing. Krueger confirmed he did not return the speeding ticket or driver's license to defendant. Based on defendant's performance during testing, Krueger arrested him for DUI (625 ILCS 5/11-501(a)(2) (West 2018)).

¶ 7        In August 2019, defendant filed a "Motion to Quash Arrest and Suppress Evidence," alleging Krueger unreasonably prolonged the traffic stop for field sobriety testing because he had "no reasonable articulable suspicion that the Defendant was driving under the influence." In December 2019, the trial court held a hearing on defendant's motion. Defendant moved to admit two exhibits showing the traffic stop: (1) 7 minutes and 46 seconds of footage from Officer Kruger's body camera and (2) 8 minutes and 10 seconds of footage from the dashboard camera in Krueger's squad car. The trial court admitted the videos without objection and watched them before hearing testimony from Krueger and defendant. During argument, defense counsel acknowledged, "I'm not contesting the initial basis for the stop, that there was speeding." She explained, "[w]e are however challenging the continued detention" because "glassy eyes, an odor of alcohol, and [defendant] admit[ing] to drinking at a bar" did not provide Krueger

with reasonable suspicion defendant committed or was committing DUI. Defense counsel highlighted what Krueger did not observe that night—he did not see defendant's car weaving, drifting, or braking erratically; he did not see defendant disheveled; he did not see defendant struggle to produce his license or insurance; and he did not hear defendant slur his speech. The State countered by arguing defendant failed to make a *prima facie* case for an unreasonable seizure. The State maintained Krueger properly stopped defendant for speeding and quickly developed reasonable suspicion that defendant was driving under the influence of alcohol. The State argued, "there's no illegal search or seizure here" because Krueger observed "multiple [DUI] factors here, and they're reliable and they're reasonable mostly from the admission of the Defendant himself."

¶ 8        The trial court rendered its decision on the record, phrasing the issue as follows: "I think the big question is whether or not there was sufficient reasonable, articulable suspicion for the officer to proceed forward with a DUI traffic stop or with the DUI investigation rather[.]" The court reiterated, "[t]he Defendant [is] not disputing the initial speeding violation." The court stated it considered the two videos and witness testimony in coming to a decision. It noted Officer Krueger's "observations *** include[d] glassy eyes and an odor of alcohol along with the Defendant admitting drinking at a bar I believe it was just 35 minutes prior." The court explained:

> "[W]e need to look at the totality of the circumstances, and that's
> what is of greatest concern to the Court, that so many times in these
> cases now what I'm finding is that I'm getting cherry picking and I
> see this happening again here. And I'm glad the officer is in here
> because I think the officer did an excellent job, but I'm concerned
> about the cherry picking that's going on."

¶ 9 The trial court noted Officer Krueger did not observe defendant driving erratically. It also noted defendant cooperated with Krueger and had no trouble speaking or producing his driver's license and proof of insurance. But in view of these nonobservations, it lamented:

> "Again, so the Court is kind of in a quandary because, yes, if you want to take out the fact that there were—appeared to be an odor of alcoholic beverage, glossy eyes, and an admission to drinking, even just stopped drinking 35 minutes ago then that could be something. Yes, it is something that an IPA is typically stronger alcohol content than a regular beer. Yes, the officer is properly trained I think making good decisions here."

¶ 10 The court ultimately granted defendant's motion to suppress, finding "if we actually take the totality of the circumstances there's just not enough to believe that there was sufficient supporting facts taken in a whole. I don't know that I'm criticizing the officer. *** [B]ut I'm concerned about the cherry picking. That's my main concern."

¶ 11 This appeal followed.

¶ 12 II. ANALYSIS

¶ 13 Before we take up the analysis of this case, we would be remiss if we did not note, once again, our disapproval of the practice of filing meaningless motions "to quash arrest" when the true purpose of the motion is to suppress evidence. See *People v. Dunmire*, 2019 IL App (4th) 190316, ¶¶ 28-31; see also *People v. Evans*, 2017 IL App (4th) 140672, ¶ 13, 73 N.E.3d 139; *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 30, 66 N.E.3d 601; *People v. Ramirez*, 2013 IL App (4th) 121153, ¶¶ 59-68, 996 N.E.2d 1227; *People v. Hansen*, 2012 IL App (4th) 110603,

¶ 62, 968 N.E.2d 164. As we also noted numerous times before, if trial courts would refuse to accept such motions and instead require counsel to properly plead, the practice might end.

¶ 14 Turning next to the issues, the State argues "the trial court erred when it determined that the police officer lacked sufficient reasonable suspicion to request defendant to perform field sobriety tests." We agree.

¶ 15 "Vehicle stops" for even minor traffic violations "are subject to the fourth amendment's reasonableness requirement" because they amount to seizures of the persons in the car. *People v. Hackett*, 2012 IL 111781, ¶ 20, 971 N.E.2d 1058; see also *People v. Jones*, 215 Ill. 2d 261, 270, 830 N.E.2d 541, 549 (2005). Generally, a vehicle stop passes constitutional muster, meaning it is reasonable, when a police officer has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). But because "[t]he United States Supreme Court has observed that the usual traffic stop is more analogous to a *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] investigative stop than to a formal arrest," a police officer may also stop a vehicle and detain its occupants based on reasonable suspicion—articulable, specific facts (and the rational inferences therefrom)—that suggest a crime has been or is about to be committed. *Jones*, 215 Ill. 2d at 270; *Hackett*, 2012 IL 111781, ¶ 20. " 'Although "reasonable, articulable suspicion" is a less demanding standard than probable cause, an officer's suspicion must amount to more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity.' " *Dunmire*, 2019 IL App (4th) 190316, ¶ 73 (quoting *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092, quoting *Terry*, 392 U.S. at 27). All told, "[a] reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence and 'obviously less' than that necessary for probable cause." *Dunmire*, 2019 IL App (4th) 190316, ¶ 41 (quoting *Navarette v. California*, 572 U.S. ___, ___, 134 S. Ct. 1683, 1687 (2014)).

¶ 16        Be it based on either probable cause or reasonable suspicion, "[a] seizure justified only by a police-observed traffic violation" may " 'become[ ] unlawful if it is prolonged beyond the time reasonably required to complete [the] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Consequently, upon completing this mission and issuing the citation, a police officer should let all the individuals go on their way. *People v. Easley*, 288 Ill. App. 3d 487, 491, 680 N.E.2d 776, 780 (1997). But when, in the course of inquiring into the traffic violation and issuing the ticket, the officer develops reasonable suspicion a different crime has been or is being committed, "further detention may be warranted." *Easley*, 288 Ill. App. 3d at 491. For example, "[i]n a DUI case, if an officer has a reasonable suspicion based on specific and articulable facts that a driver is under the influence of alcohol, field sobriety tests *** may be justified." (Internal quotation marks omitted.) *Village of Plainfield v. Anderson*, 304 Ill. App. 3d 338, 342, 709 N.E.2d 976, 979 (1999). When "judging a police officer's conduct" in detaining a vehicle based on either probable cause or reasonable suspicion, "we apply an objective standard." *Hackett*, 2012 IL 111781, ¶ 29. "The test is not what the officer *should have seen*, but whether, viewed objectively, the totality of the facts and circumstances known to the officer at the time of the stop would warrant a reasonable and prudent person to believe a crime had been committed." (Emphasis added and internal quotation marks omitted.) *Dunmire*, 2019 IL App (4th) 190316, ¶ 73. Bearing this in mind, we turn our attention to the case at hand.

¶ 17        To be clear, this case begins with what everyone (the State, defendant, the trial court, and now us) agrees was a valid probable cause traffic stop for speeding. There is no question the initial traffic stop satisfied the fourth amendment's reasonableness requirement. Indeed, the trial court concluded, "the traffic stop was fine." Officer Krueger had probable cause (and

necessarily reasonable suspicion) that defendant was committing a traffic violation. Krueger clocked defendant driving over the 30-mile-per-hour speed limit, and defendant admitted he was speeding. See *Jones*, 215 Ill. 2d at 271 (explaining since the officer observed the driver commit a traffic violation, the "initial stop of [the] vehicle was supported by probable cause and, therefore, was justified at its inception"). Defendant, therefore, did not (and does not) contest the initial stop.

¶ 18    Rather, believing Officer Krueger lacked reasonable suspicion of DUI to justify having him submit to field sobriety testing, defendant challenged as unlawful his "unreasonably prolonged" detention following the initial traffic stop. The trial court agreed and granted his suppression motion—a decision subject to *de novo* review. *Hackett*, 2012 IL 111781, ¶ 18. The State appealed, arguing the trial court erred because Officer Krueger had reasonable suspicion to detain defendant for field sobriety testing. For the following reasons, we agree with the State and reverse the trial court's judgment.

¶ 19    Since this case began with a valid traffic stop for speeding, our inquiry into whether Officer Krueger had reasonable suspicion to prolong the lawful traffic stop for field sobriety testing does not begin when Krueger first observed the speeding vehicle but when he first encountered defendant. In other words, the totality of the circumstances for this brief investigatory detention under *Terry* began when Krueger approached defendant's vehicle. Before that point, this was a probable cause traffic stop for speeding. Although defendant and the trial court highlighted certain circumstances leading up to the stop for speeding—defendant's driving showed no weaving, no erratic braking, no drifting, and he appropriately signaled and appropriately stopped the vehicle— those circumstances are irrelevant to our inquiry here.

¶ 20    This case transitioned from a routine traffic stop for speeding into a separate DUI investigation when Officer Krueger met with defendant. Officer Krueger testified he suspected

defendant of DUI when he saw his glossy eyes, smelled alcohol on his person and in the car, and heard defendant say he was coming from a restaurant where he drank 2½ IPA beers. Krueger pointed to specific, articulable facts—not to inchoate, unparticularized hunches—suggesting he encountered a possible DUI in progress. Likewise, the reasonable inferences from these specific, articulable facts could lead a reasonable, prudent person to suspect defendant might be driving under the influence. See *Dunmire*, 2019 IL App (4th) 190316, ¶ 72 (" 'To justify a *Terry* stop, officers must be able to point to specific and articulable facts that, considered with the rational inferences therefrom, make the intrusion reasonable.' " (quoting *People v. McMichaels*, 2019 IL App (1st) 163053, ¶ 22)). Officer Krueger did not have to *know* with any level of certainty that defendant was driving under the influence before detaining him briefly for field sobriety testing— he needed to have particular, articulable facts suggesting defendant *might be* driving under the influence. *People v. Close*, 238 Ill. 2d 497, 511, 939 N.E.2d 463, 471 (2010) ("*Terry* *** does not require that the officer 'know' that the driver is committing a crime."); *Dunmire*, 2019 IL App (4th) 190316, ¶ 41 (ranking reasonable suspicion as a standard "less than proof of wrongdoing by a preponderance of the evidence[,] *** 'obviously less' than *** probable cause" and, of course, less than "proof beyond a reasonable doubt").

¶ 21 Officer Krueger had no reason to suspect DUI as he pursued and eventually stopped defendant's speeding vehicle. He acknowledged as much under oath, saying he stopped defendant for speeding only. But Krueger came to suspect DUI when he encountered defendant's person, transitioning the routine traffic stop into a separate DUI investigation.

¶ 22 Though not dispositive here, we find instructive our supreme court's opinion in *People v. McDonough*, 239 Ill. 2d 260, 940 N.E.2d 1100 (2010). There, a police officer approached a vehicle parked on the side of a busy four-lane highway late at night to offer assistance. The

officer explained the vehicle had not been parked there a few minutes before, so he wanted to offer help in case the vehicle or driver were in distress. The officer stated he had no suspicion or hunches when he approached the car. When the driver rolled down the window, the officer smelled alcohol. He asked the driver " 'how much he had to drink,' " to which the driver said " 'three.' " Only then did the officer suspect DUI and ask the driver to submit to field sobriety testing. *McDonough*, 239 Ill. 2d at 262-63. The supreme court found the initial seizure reasonable under the community caretaking exception to the fourth amendment. *McDonough*, 239 Ill. 2d at 273. Then the court explained: "When [the driver] rolled down his window and opened his mouth to speak, [the officer] acquired the reasonable suspicion necessary to further detain and investigate [the driver]." *McDonough*, 239 Ill. 2d at 274. Since it found no fourth amendment violation in either the initial stop or the detention for field sobriety testing, the supreme court confirmed that the trial court erred in granting the driver's motion to suppress. *McDonough*, 239 Ill. 2d at 274-75.

¶ 23    Though dealing with an initial stop based on community caretaking rather than probable cause, *McDonough* illustrates how in the midst of a reasonable inquiry a police officer may develop reasonable suspicion, unrelated to the reason for the initial encounter, to further detain a defendant for investigation into a separate matter. That is what happed here. Like *McDonough*, Officer Krueger reasonably seized defendant and had no suspicion defendant was driving under the influence until defendant rolled down his window and Krueger encountered him. It has happened in other cases, too. See *Village of Plainfield*, 304 Ill. App. 3d at 342 (following a valid traffic stop for a cracked windshield, the officer developed unrelated reasonable suspicion for "a limited detention to ascertain whether defendant was under the influence of alcohol" based on smelling alcohol, seeing defendant's bloodshot, glossy eyes, hearing defendant's slurred speech, and defendant admitting drinking three to four beers in the past hour); *Village of Lincolnshire v.*

- 10 -

*Kelly*, 389 Ill. App. 3d 881, 885, 907 N.E.2d 440, 445-46 (2009) (following a valid traffic stop for speeding, the officer acquired unrelated reasonable suspicion for DUI based on an odor of alcohol and defendant's admission of drinking one glass of wine). We do not cite these cases because they stand on "all-fours" with this case. Few DUI cases are exactly the same. Few DUI defendants exhibit identical indicators for intoxication. This is why there is no bright-line rule for reasonable suspicion generally and reasonable suspicion for DUI specifically. See *Timmsen*, 2016 IL 118181, ¶ 18. We cite these cases simply to show how an initial reasonable encounter with police can develop into a separate brief investigative detention under *Terry* if the officer acquires specific, individualized, articulable facts that a crime has been or is being committed. And it is those circumstances following the initial, valid encounter that are relevant to the *Terry* inquiry into the prolonged detention. Here, upon encountering defendant's person—smelling alcohol, seeing defendant's glossy eyes, and hearing defendant admit to drinking 2½ IPAs as recently as 35 minutes prior—Officer Krueger developed reasonable suspicion to briefly detain defendant for field sobriety testing. The trial court erred in finding otherwise and granting defendant's suppression motion.

¶ 24        In hopes of providing some guidance for these decisions in the future, we pause briefly to comment on the trial court's approach and rationale in this case. By way of reminder, in determining "whether or not there was sufficient reasonable, articulable suspicion *** to proceed *** with the DUI investigation," the trial court focused on what Officer Krueger did not see and hear when he encountered defendant—erratic driving or noncooperation from defendant, to name a few. Even though the court acknowledged this "was a good traffic stop" and even noted Officer Krueger had reasons to believe defendant might be driving under the influence, the trial court found the prolonged detention unreasonable, *i.e.*, not supported by reasonable suspicion, because

it was "concerned about cherry picking." We find the court's approach flawed in three ways. First, though it may seem persnickety, police do not need "sufficient" reasonable suspicion, but simply "reasonable suspicion" to proceed with a DUI investigation. To the extent the trial court used "sufficient" as a measure for an amount of reasonable suspicion needed to detain defendant, such use was improper because reasonable suspicion is not subject to quantification. Second, as we said *supra*, this reasonable-suspicion inquiry began when Officer Krueger approached defendant's stopped vehicle. It did not begin when Krueger first observed defendant's speeding vehicle. Therefore, the court's focus on defendant's driving before the stop was a mistake. Such observations may be relevant, perhaps, when an officer is attempting to develop a basis for a stop, but here, there was no such need. Third, we find confusing the court's emphasis on cherry picking. Three times the court expressed concern that Officer Krueger was "cherry picking," though it never explained what it meant by the phrase. From context clues we understand the term connotes subjectivity, not objectivity, on Officer Krueger's part. Whatever the court meant by "cherry picking," we cannot endorse the court's statements describing it as the court's "greatest" or "main concern" because a police officer's "[s]ubjective intentions play *no role* in ordinary *** Fourth Amendment analysis." (Emphasis added.) *Whren*, 517 U.S. at 813; see also *Village of Plainfield*, 304 Ill. App. 3d at 342 ("[T]he United States Supreme Court has held that the 'subjective intent' or actual motivation of the police officers involved should play no role in determining the reasonableness of an investigation pursuant to the Fourth Amendment.").

¶ 25    Reasonable suspicion is a low bar, and Officer Krueger cleared it here. Seeing defendant's glossy eyes, smelling alcohol from defendant and the vehicle, and hearing defendant admit to drinking 2½ IPAs provided Krueger with reasonable suspicion that defendant might be committing DUI. The fact these observations occurred simultaneously with the traffic stop did

nothing to prolong it, and once he had the reasonable suspicion, he did not unlawfully prolong a valid traffic stop by having defendant submit to field sobriety testing.

¶ 26                              III. CONCLUSION

¶ 27        For the reasons stated, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

¶ 28        Reversed and remanded.

**No. 4-19-0917**

| | |
|---|---|
| **Cite as:** | *People v. Patel*, 2020 IL App (4th) 190917 |
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 19-DT-342; the Hon. Pablo A. Eves, Judge, presiding. |
| **Attorneys for Appellant:** | Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Catherine K. Hart, and Simone A. Patras, of State Appellate Defender's Office, of Springfield, for appellee. |