2023 IL App (1st) 221733-U
Order filed: September 14, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-1733

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| RIKKI JOHNSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 2021 CH 2785 |
| THOMAS J. DART, in his official capacity | ) | |
| as Sheriff of Cook County, Illinois; | ) | |
| THE COOK COUNTY SHERIFF'S MERIT | ) | |
| BOARD; and COOK COUNTY, ILLINOIS, | ) | |
| as indemnitor, | ) | Honorable |
| | ) | Allen Price Walker, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirmed the majority of the Merit Board's findings that plaintiff violated several Department rules and regulations by failing to notify his supervisor that he had been stopped, ticketed, and convicted in South Carolina for a misdemeanor traffic offense. We vacated plaintiff's 90-day suspension and remanded for the Merit Board to take new disciplinary action against plaintiff.

¶ 2        Plaintiff, Rikki Johnson, a police officer with the Cook County Sheriff Police Department (Department), failed to timely notify his superiors in the Department that he had been detained, ticketed, and convicted in South Carolina for speeding and for having an open container of alcohol in the backseat of his vehicle. The Sheriff's Merit Board (Merit Board) determined that by failing to so notify his superiors of his traffic stop, citations, and conviction, plaintiff violated several Department and Merit Board rules, regulations, and policies and it suspended him for 90 days. Plaintiff filed a complaint for administrative review. The circuit court confirmed the majority of the Merit Board's factual findings and its suspension decision. On appeal, we affirm in part, vacate in part, and remand for further proceedings.

¶ 3        In connection with plaintiff's failure to report the traffic stop, citations, and conviction, the Sheriff filed written charges with the Merit Board. The Sheriff charged plaintiff with violating Department Rule 00-01-A.6 subsection VI.6.4, which states that "Any member who is arrested/detained or questioned for any suspected criminal matter, including serious traffic offenses will immediately notify their Commanding Officer/Supervisor."

¶ 4        The Sheriff also charged plaintiff with violating several Department policies, specifically: Policy 321.5.2(f), for failing to report activities that "may result in criminal prosecution or discipline"; Policy 321.5.2(g) for failing "to report as soon as practicable to the respective department head *** any activities that have resulted in official contact by any other law enforcement agency, investigative body or charging authority"; Policy 321.5.2(h) for "disclosing one's status as a [Cook County Sheriff's officer] in any way that could reasonably be perceived as an attempt to gain influence or authority for non-official business or activity"; and Policy 321.5.2(r) for failing to make either verbal notification to the Cook County Communications Center or a written report to the department head and to the Office of Professional Review "as

soon as practicable" specifying "the facts forming the basis for the arrest, indictment or conviction."

¶ 5    Plaintiff also was charged with violating Article X, paragraph B of the Merit Board's Rules and Regulations, which states that no Sheriff's officer will violate any of the "Sheriff's Executive Orders, General Orders, Special Orders, Directives or Rules and Regulations of the Cook County Sheriff's Department or Cook County Sheriff's Merit Board Rules and Regulations."

¶ 6     At the hearing before the Merit Board, plaintiff testified that he is a police officer who has been employed in the Department since 2004. On August 16, 2014, he was on vacation and driving on an interstate in South Carolina with a female passenger. He admitted that he was speeding and armed with a gun. Plaintiff drove past a Kershaw County, South Carolina, sheriff's vehicle parked at a rest area. The sheriff's vehicle was manned by a single deputy, who followed plaintiff and curbed him.

¶ 7    Plaintiff pulled over immediately. The deputy approached his vehicle and plaintiff handed over his driver's license, insurance card, and an I.D. card identifying himself as a police officer with the Department. When asked why he gave the deputy the I.D. card, plaintiff testified:

> "Because I'm in Kershaw County, South Carolina, a black man with a weapon with a very light-skinned young lady sitting next to me being stopped by a white deputy, so I thought it would be safe or in my best interest to let him know that I was armed and a police officer."

¶ 8    When asked whether he requested "any kind of courtesy because you're a law enforcement officer," plaintiff testified, "I did not."

¶ 9    The deputy asked plaintiff to step out of his vehicle. Plaintiff complied and walked to the back of the vehicle, where he turned around and raised his shirt so that the deputy could see the gun. The deputy disarmed plaintiff, stated that he smelled alcohol, and asked plaintiff whether he

had been drinking. Plaintiff said no. The deputy noticed a McDonald's cup in the back seat cup holder and asked plaintiff to hand it to him. Plaintiff did so, and the deputy discovered "residue of beer" inside the cup. Plaintiff testified that the beer probably belonged to his ex-girlfriend's brother, who had been traveling in the back seat of the vehicle the day prior to the stop.

¶ 10    The deputy performed the horizontal gaze nystagmus (HGN) test on plaintiff to see if he had any nystagmus, or involuntary eye movement, caused by intoxication. The deputy determined that plaintiff had no nystagmus and he performed no other field sobriety tests on plaintiff. The deputy never read plaintiff his *Miranda* rights, nor did he handcuff or fingerprint him or ask him to come to the police station or tell him that he was under arrest. The deputy never placed plaintiff in a police vehicle or said anything causing plaintiff to believe he was under arrest. On cross-examination, though, plaintiff testified that during his encounter with the deputy, he did not believe that he was free to leave the scene.

¶ 11    The deputy issued plaintiff two tickets, one for speeding and one for having an open container of alcohol in his vehicle. To plaintiff's knowledge, both infractions were misdemeanors. After receiving the tickets, plaintiff left the scene. The entire interaction with the deputy took about 10 to 15 minutes. Plaintiff returned to Illinois and "forgot" about the citations. He never received any written correspondence from Kershaw County reminding him of the need to pay the citations.

¶ 12    Unbeknownst to plaintiff, on August 19, 2014, a criminal charge was filed against him in Kershaw County for violating the provision in South Carolina's criminal code prohibiting an open container of beer in a motor vehicle while located on the public highways (see S.C.Code Ann. § 61-4-110 (2012)), which is a misdemeanor offense punishable by a fine or jail time. *Id*. The criminal charge sets forth an arrest date of August 16, 2014. Trial was set for September 23, 2014. Plaintiff did not appear at the September 23, 2014, trial, at which he was found guilty and ordered

to serve either 30 days in jail or pay a fine of $262.50. When plaintiff failed to serve jail time or pay the fine, South Carolina issued a warrant for his arrest.

¶ 13    On or about October 28, 2016, plaintiff attempted to purchase a firearm at Eagle Sports Range in Oak Forest. The range representative ran a background check and informed plaintiff that his firearm owners identification (FOID) card had been revoked based on the warrant against him in South Carolina. Plaintiff immediately contacted the circuit clerk in Kershaw County and paid the fine, resolving the criminal case against him. Plaintiff also called the Illinois State Police FOID section to obtain the necessary information to appeal the revocation of his FOID card and he subsequently filed the appeal. Plaintiff contacted Sergeant Imhof to advise him of the revocation. Sergeant Imhof assigned Investigator Sandoval to take possession of the FOID card and write a report. On November 2, 2016, plaintiff transferred his firearm to another officer and filled out an Illinois State Police Firearm Disposition Record showing that he had transferred the firearm. On November 8, 2016, plaintiff's FOID card was reinstated.

¶ 14    On November 13, 2016, plaintiff submitted a memorandum to the Department stating:

> "R/O was purchasing a firearm and learned that R/O's FOID card was temporarily revoked because of an outstanding citation out of the State of South Carolina I received approximately the summer of 2014. R/O forgot about the citation upon my return from vacation. Once R/O learned of the citation it was immediately resolved. At which time R/O started that appeal process. R/O received a letter from ISP of the revocation on 3 Nov 16 at which time R/O notified my supervisor. R/O used personal time off [until] the FOID card was reinstated on or about the 9 Nov 16."

¶ 15    Plaintiff testified that he had not previously notified the Department about the citations he received during his traffic stop in South Carolina because "they were petty offenses."

¶ 16    Inspector John Sullivan testified that Deputy Chief Theodore Stajura assigned him to investigate the circumstances surrounding the issuing of the arrest warrant for plaintiff in South Carolina and the revocation of plaintiff's FOID card. Sullivan wrote a summary report of his investigation, which was admitted into evidence at the hearing. Per the summary report, Sullivan spoke with plaintiff, who recounted the two citations he received in Kershaw County, South Carolina, for speeding and for having an open container (a McDonald's cup) in his vehicle containing the "remnants of beer." Plaintiff paid the speeding citation but forgot to pay the other citation. Plaintiff was asked if a citation constitutes an arrest, and he replied no unless it was accompanied by a booking procedure. Plaintiff was informed that "each and every citation is considered an arrest due to the fact that an individual is being stopped and detained and issued a summons to appear in court."

¶ 17    Plaintiff stated to Sullivan that until he learned of the revocation of his FOID card on or about October 28, 2016, he was unaware that a bench trial had been held in his absence in South Carolina, where he was sentenced to either pay a fine of $262.50 or serve 30 days in jail, and he was unaware that a warrant was issued for his arrest. Plaintiff further stated that at the time of the initial stop and the issuance of the two citations, he did not make any notification to the Sheriff's Office because he believed it was not necessary. Once he realized that his FOID card had been revoked, plaintiff followed the procedure for turning in a revoked FOID card and transferring his weapons to someone else.

¶ 18    Sullivan reviewed a computer-generated printout of a public index search of the Kershaw County Fifth Judicial Circuit. The printout references "The State of South Carolina vs. Rikki D Johnson" and states that the case was filed on August 19, 2014, as a criminal matter with an arrest date of August 16, 2014. The charge was "open container of beer or wine in motor vehicle."

Plaintiff was found guilty after a bench trial on September 23, 2014, and sentenced to either a fine of $262.50 or 30 days in jail to be served from September 23, 2014, to October 23, 2014. Plaintiff never served the jail time. He paid the fine on October 28, 2016, thereby disposing of the criminal proceedings against him.

¶ 19  Sullivan also reviewed an email exchange between Senior Criminal Analyst Flumefreddo Waters and Deputy Chief Stajura, in which Waters advised that she had contacted the Kershaw County Sheriff's Office and spoke to a person named Beverly in the records section. Beverly informed her that plaintiff was issued two citations for speeding and for having open alcohol in a motor vehicle, no arrest report was generated, and no photographs were taken of him at the scene.

¶ 20  Sullivan opined that the offense of possessing an open container of alcohol in a motor vehicle is "serious" and that it constitutes a Class A misdemeanor in Illinois. He concluded that plaintiff's traffic stop in South Carolina for speeding culminated in his brief arrest when the deputy discovered the cup of beer in the back seat, and that plaintiff's failure to so notify the Sheriff's office violated Department Rule 00-01-A.6 subsection VI 6.4, Department policy 321 and Article X, paragraph B of the Merit Board's Rules and Regulations.

¶ 21  Following all the evidence, the Merit Board concluded that plaintiff violated Department Rule 00-01-A.6 subsection VI 6.4, Department policies 321.5.2(f), (g), (h), and (r) and Article X, paragraph B of the Merit Board's Rules and Regulations and suspended him for 90 days effective July 20, 2019. On administrative review, the circuit court confirmed the Merit Board's factual findings and suspension order, which the exception of the finding that plaintiff violated Department policy 321.5.2(h); the court determined that the Sheriff failed to prove that plaintiff violated section 321.5.2(h) by showing his I.D. to the deputy during the traffic stop. Plaintiff appeals.

¶ 22    In an administrative review case, we review the decision of the administrative agency instead of the decision of the circuit court. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 67. We employ a two-step process when reviewing an agency's decision to suspend an employee. *Chambers v. Flota*, 191 Ill. App. 3d 603, 606 (1989). First, we decide whether the agency's findings of fact are against the manifest weight of the evidence (*id.*), meaning that the opposite conclusion is clearly evident. *Lopez*, 2018 IL App (1st) 170733, ¶ 70. Second, we determine whether the agency's factual findings are a sufficient basis to conclude that there was cause to impose the suspension; the test is whether the conclusion is arbitrary, unreasonable or unrelated to the requirements of the service. *Chambers*, 191 Ill. App. 3d at 606.

¶ 23    First, plaintiff argues that the Merit Board erred in finding that he violated Department Rule 00-01-A.6 subsection VI.6.4, which states that any member who "is arrested/detained or questioned for any suspected criminal matter, including serious traffic offenses, will immediately notify their Commanding Officer/Supervisor." Plaintiff contends he was not arrested at the time of his traffic stop and therefore owed no duty to notify his superior. The Sheriff counters that plaintiff did not believe he was free to leave at the time of the traffic stop, and thus he was under arrest. See *People v. Reed*, 298 Ill. App. 3d 285, 298 (1998) (an arrest occurs when a reasonable, innocent person would conclude he was not free to leave).

¶ 24    We need not determine whether plaintiff's traffic stop constituted an arrest. Rule 00-01-A.6 subsection VI.6.4 provides a notification requirement not only for when a member is arrested, but also when he is "detained or questioned" for any suspected criminal matter, which indicates that he must notify his superior not only of an arrest but also a *Terry* stop. A *Terry* stop is a temporary investigative detention of a person, short of arrest, which may be performed when the officer has a reasonable, articulable suspicion that a crime has been or is about to be committed.

*People v. Johnson*, 408 Ill. App. 3d 107, 112-113 (2010); *People v. Gherna*, 203 Ill. 2d 165, 177 (2003). The performance of field sobriety tests on a person reasonably suspected of driving under the influence constitutes an investigative detention/*Terry* stop. *People v. Patel*, 2020 IL App (4th) 190917, ¶ 16.

¶ 25     Here, the deputy pulled plaintiff over for speeding, then asked him to step outside the vehicle when he indicated he possessed a weapon. After disarming plaintiff and smelling alcohol, the deputy asked plaintiff to hand him a McDonald's cup from the back seat of the vehicle, which contained a small amount of beer. The deputy then performed the HGN field sobriety test on plaintiff, before issuing him two citations for speeding and for possessing an open container of alcohol in a motor vehicle. The entire encounter lasted about 10-15 minutes and at the least constituted an investigative detention/*Terry* stop for possessing an open container of alcohol in his motor vehicle, which is a criminal matter. As such, plaintiff was required by Rule 00-01-A.6 subsection VI.6.4 (the rule) to immediately notify his supervisor of the *Terry* stop and his failure to do so constituted a violation of the rule. The Merit Board's finding to that effect was not against the manifest weight of the evidence.

¶ 26     Plaintiff argues that under the rule, he only was required to notify his superior of a detention for a "serious traffic offense" and he contends that the traffic offenses for which he received citations were not serious enough to fall under the notification requirement. To the contrary, the rule states that the officer must notify his supervisor of a detention for "*any* suspected criminal matter, including serious traffic offenses." (Emphasis added.). In other words, a detention for "serious traffic offenses" was merely one subpart of the broader requirement that he notify his superior of his detention for "any suspected criminal matter." Plaintiff here was detained for a

suspected criminal matter (driving with an open container of alcohol), and as such the rule required him to report the detention to his superior.

¶ 27    Plaintiff argues for reversal based on the Merit Board's erroneous finding that the deputy told him he smelled alcohol *on his breath*. Plaintiff contends that he never testified that the deputy stated he smelled alcohol on his breath, only that the deputy "said something about he smelled alcohol, had I been drinking?" Plaintiff's testimony indicates that this interaction and the smelling of alcohol occurred while he and the deputy were in close proximity to each other outside the vehicle, while the deputy was removing plaintiff's weapon from underneath his shirt. It is a reasonable inference from this testimony that the deputy was referencing alcohol smelled on plaintiff's breath. Where an administrative agency's factual inferences are reasonable, they are entitled to acceptance on review. *Environmental Protection Agency v. Pollution Control Board*, 252 Ill. App. 3d 828, 830 (1993). We find no reversible error.

¶ 28    Next, plaintiff argues that the Merit Board erred by finding that he violated Department policy 321.5.2 without specifying which specific subsections were violated. Review of the Merit Board's order shows that plaintiff was charged with violating subsections (f), (g), (h), and (r) of Department policy 321.5.2 and that the Merit Board found that the Sheriff satisfied its burden of proof on all charges, meaning that plaintiff was found to have violated subsections (f), (g), (h) and (r). We proceed to address whether the Merit Board's findings were against the manifest weight of the evidence.

¶ 29    Department policy 321.5.2(f) required plaintiff to report activities that may result in criminal prosecution, meaning that he was required to report the August 16, 2014, traffic stop in Kershaw County, South Carolina, which resulted in a citation subjecting him to potential criminal prosecution for the misdemeanor offense of having an open container of alcohol in the backseat of

his vehicle. Plaintiff in fact was convicted of that offense on September 23, 2014. However, the evidence in the record indicates that plaintiff did not disclose the traffic stop and citation for over two years, until November 13, 2016, when he sent a memorandum to the Department stating that his FOID card had been revoked due to an "outstanding citation out of the State of South Carolina." Plaintiff did not even specify the nature of the citation. The Merit Board's finding that plaintiff violated Department policy 321.5.2(f) was not against the manifest weight of the evidence.

¶ 30    Plaintiff argues that he notified the Department of the traffic stop and citations as early as November 2, 2016; however, there is no evidence in the record in support thereof. Even if he did so, such notification still came more than two years after his traffic stop. The Merit Board's finding that plaintiff violated Department policy 321.5.2(f) by his two-year delay in notifying his superior about the August 16, 2014, traffic stop and citations was not against the manifest weight of the evidence.

¶ 31    Next, we address the Merit Board's finding that plaintiff violated Department policy 321.5.2(g), which required him to report "as soon as practicable" to the Department head "any activities that have resulted in official contact by any other law enforcement agency, investigative body or charging authority." Plaintiff's act of speeding and driving on a highway in Kershaw County, South Carolina, on August 16, 2014, with a cup containing the residue of beer resulted in official contact with that county's sheriff's department and ultimately resulted in his receiving two citations and being convicted of a misdemeanor traffic offense. Plaintiff argues that he was unaware of his conviction until late October 2016 and thus could have not reported it prior thereto; however, plaintiff certainly knew of his August 2014 traffic stop and the citations issued by law enforcement in Kershaw County and he clearly violated section 321.5.2(g) by waiting over two

years to report them to the Department. Accordingly, the Merit Board's finding that plaintiff violated Department policy 321.5.2(g) was not against the manifest weight of the evidence.

¶ 32    Next, we address the Merit Board's finding that plaintiff violated Department policy 321.5.2(h), which prohibits him from disclosing or using his status as a sheriff's officer "in any way that could reasonably be perceived as an attempt to gain influence or authority for non-official business or activity." The Merit Board contends that plaintiff showed the South Carolina deputy his I.D. card identifying himself as a police officer with the Cook County Sherriff's Department to gain influence during the traffic stop. The circuit court rejected this same argument on administrative review, finding that plaintiff presented a reasonable explanation for showing his I.D. card and that no evidence refuting plaintiff's explanation was presented. The Merit Board has not appealed the circuit court's finding against it, and therefore the issue is not properly before us. See *Swinkle v. Illinois Civil Service Commission*, 387 Ill. App. 3d 806, 810 (2009) (the timely filing of a notice of appeal is mandatory and jurisdictional). Even if the Merit Board *had* filed a notice of appeal, our holding would have been the same as the circuit court.

¶ 33    Next, we address the Merit Board's finding that plaintiff violated Department policy 321.5.2(r), which states that when a member is arrested, indicted, or convicted of a felony or misdemeanor, he shall: (1) make verbal notification as soon as practicable to the Cook County Communications Center and (2) submit a written report to the department head and Office of Professional Review (OPR) as soon as practicable upon return to work. Plaintiff states he was unaware that his traffic stop was considered an arrest in South Carolina and thus he should not be disciplined under section 321.5.2(r) for failing to report it upon return to work. However, section 321.5.2(r) also requires the reporting of any *conviction* of a felony or misdemeanor. Plaintiff admittedly learned on or about October 28, 2016, of his conviction in South Carolina for the

misdemeanor offense of having an open container of alcohol in his vehicle and thus he was required to provide verbal notification to the Cook County Communications Center and written notification to the department head and to OPR. There is no indication in the record that plaintiff ever submitted the requisite verbal notification to the Cook County Communications Center or the written notice to OPR about his conviction. Accordingly, the Merit Board's finding that plaintiff violated Department Rule 321.5.2(r) was not against the manifest weight of the evidence.

¶ 34 Next, we address the Merit Board's finding that plaintiff violated Article X, paragraph B of the Merit Board's Rules and Regulations, which states that no officer in the Department will violate any of the Department rules and regulations. As discussed earlier in this order, plaintiff violated Department Rule 00-01-A.6 subsection VI.6.4 as well as Department policies 321.5.2(f), (g), and (r); such rules and policy violations also constitute a violation of Article X, paragraph B of the Merit Board's Rules and Regulations. The Merit Board's finding to that effect was not against the manifest weight of the evidence.

¶ 35 Finally, we address plaintiff's 90-day suspension. The 90-day suspension was premised in part on the Merit Board's finding that plaintiff violated Department policy 321.5.2(h) when he showed the South Carolina deputy his I.D. card identifying himself as a Cook County Sheriff's Officer in order to gain influence during the traffic stop. As discussed earlier in this order, the Merit Board's finding that plaintiff violated Department policy 321.5.2(h) was reversed by the circuit court on administrative review and the Merit Board filed no appeal therefrom. We do not know how much weight the Merit Board attributed to that finding when disciplining plaintiff. Accordingly, we vacate the 90-day suspension and remand for the Merit Board to take new disciplinary action against plaintiff based only on his violations of Department Rule 00-01-A.6 subsection VI.6.4 and Department policies 321.5.2(f), (g), and (r) and Article X, paragraph B of

the Merit Board's Rules and Regulations. The Merit Board is not to consider any alleged violation of Department policy 321.5.2(h) when taking new disciplinary action against plaintiff.

¶ 36    Affirmed in part, vacated in part, and remanded.